IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2008 JAN -2 P 1:50

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

EUGENE ADAMS, REGINA BROWN )
DEBRA CAMPBELL, THADDEUS DAVIS, )
JOHN GASTON, VALENCIA LUCAS, )
SHEDRICK MORROW, )
THOMAS JOHNSON, STEVE STONE )
DANIEL WARREN, ATHENA WOODSON, )
AND MARCUS VARNER, )
)
)
 Plaintiffs, )
)
v ) CIVIL ACTION NUMBER:
)
INTERNATIONAL PAPER, ) 2:08cv0006
)
)
 Defendant )

## COMPLAINT

### INTRODUCTION

This action is brought by twelve (12) former African-American employees of International Paper to oppose the discriminatory practices of the mill formerly owned by International Paper. The plaintiffs were assigned the more physically arduous positions, excluded from promotions and were exposed to a racially in hostile environment when the facility was owned by International Paper.

**I. JURISDICTION**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Sections 2201 and 2202, and Section 2000e et seq. This is a suit in law and equity authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq. The Civil Rights Act of 1991 and 42 U.S.C. § 1981, § 1981(a) and the four year statute of limitations provided by 29 U.S.C. § 1658. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. Section 2000e et seq. providing for injunctive relief, back pay, compensatory damages, punitive damages, attorneys fees, and other relief against race discrimination.

2. Plaintiffs have fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq. Plaintiffs timely filed their charges of discrimination against International Paper within 180 days of occurrence of the last discriminatory act. Plaintiffs (except Debra Campbell who is awaiting her right to sue letter) filed their race discrimination within 90 days of the receipt of their respective Notices of Right To Sue from the Equal Employment Opportunity Commission ("EEOC").

## II. PARTIES

3. Plaintiff Eugene Adams, an African-American male, is former employee of International Paper.

4. Plaintiff Regina Brown, an African-American female, is a former employee of International Paper.

5. Plaintiff Debra Campbell is an African-American female, is former an employee of International Paper.

6. Plaintiff Thaddeus Davis, an African-American male, is a former employer of International Paper.

7. Plaintiff John Gaston, an African-American male, is a former employee of International Paper.

8. Plaintiff Valencia Lucas, an African-American female, is an former employee of International Paper.

9. Plaintiff Shedrick Morrow, an African-American male, is a former employee of International Paper.

10. Plaintiff Thomas Johnson, an African-American male, is a former employee of International Paper.

11. Plaintiff Steve Stone, an African-American male, is an former employee of employee of International Paper,

12. Plaintiff Daniel Warren, an African-American male, is a former

employee of of International Paper.

13. Plaintiff Marcus Varner, an African-American male, and a former employee of International Paper.

14. Athena Woodson, an African-American female, a former employee of International Paper.

15. Defendant, International Paper, is a corporate entity which until some time in early 1997 did business in Chilton County in the State of Alabama. The defendant employs at least fifteen (15) persons.

16. The defendant Company is an employer subject to suit pursuant to the provisions of the Act of Congress known as "The Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq. and 42 U.S.C. § 1981.

III. **STATEMENT OF FACTS**

17. The plaintiffs re-allege and incorporate by reference paragraphs 1-16 above with the same force and effect as if fully set out in specific detail herein below. The defendant International Paper discriminated against each of the plaintiffs, jointly and severally on the basis of race with respect to a hostile environment and job assignments in the mill as they assigned the African-Americans to the lower level and physically demanding jobs.

18. **Eugene Adams,** an employee since 1996, has experienced and

observed racial discrimination, with respect to terms and conditions of employment including job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. The African-American employees are assigned to the I-Line and the white employees are assigned to the press operator positions. This pattern and practice of racial discrimination has adversely affected Adams by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; because they are not being considered for job classifications traditionally held by white employees at International Paper.

19. Adams is an I-line operator. Management uses a "tap on the shoulder approach and "word of mouth" as a recruitment mechanism to ensure that almost all management positions go to white employees. Adams was denied a promotion to management at IP's Maplesville facility. After applying for the promotion, Adams did not receive an interview. As Adams had served as a relief supervisor, he was well qualified for the vacancy. Adams later received a letter stating that he was not minimally qualified for the job despite the fact that he had performed the job on and off since the year 2000.

20. Adams has also been exposed to a racially hostile environment. The

white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles. The display of the flag is a symbol of racial oppression and slavery. IP local management tolerated these displays. Maintenance employees make racial comments such as, "What do you call a nigger on a branch with four monkeys ? A branch manager." The comment was reported to supervision. Reasonable care was not taken to prevent such comments and correct promptly such harassing behavior.

21.  **Regina Yuvette Brown**, an employee since 1998, has experienced and observed racial discrimination, racial harassment with respect to job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. Brown is assigned to the fork lift. Brown has been denied the opportunity to learn positions such as lubrication technician, supervisor ,scheduler, vibration technician and EAHS manager jobs that were all awarded to white employees.

22.  Brown has also been exposed to a racially hostile environment. The white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles.

23.  **Debra Campbell**, an employee since 1999, has experienced and

observed racial discrimination and hostile work environment with respect to job assignments and promotions. Campbell, works in the office and has sought to move to an accounting job. There was a vacancy but IP would not move Campbell, who was qualified for the position. Campbell was informed that IP did not know what position to place her in.

24.     **Thaddeus Davis,** an employee of International Paper from 2000- until 2007, has experienced and observed racial discrimination, racial harassment with respect to job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. Davis started his employment on the Green End Department and then moved to fork lift in the shipping department. Until the filing of the EEOC charge, Davis was unsuccessful in obtaining promotions to better positions. This pattern and practice of racial discrimination has adversely affected Davis by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at International Paper.

25.     Davis has also been exposed to a racially hostile environment. The white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles. The display of the flag is a symbol of racial

oppression and slavery. IP local management tolerated these displays. Maintenance employees also made racial comments, and no prompt remedial action was taken.

26.     **John Gaston, an employee since 1997,** has experienced and observed racial discrimination, racial harassment with respect to appointments, selection decisions, job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. The African-American employees are assigned to the I-Line which involves heavy lifting and the white employees are assigned to the press operator positions. This pattern and practice of racial discrimination has adversely affected Gaston by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at International Paper.

27.     Gaston has also been exposed to a racially hostile environment. Some white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles. The display of the flag is a symbol of racial oppression and slavery. Gaston is also aware that racial jokes were being told at the work place with no action being taken until after the filing of the EEOC charges.

28.  **Valencia Lucas,** an employee since 1997, has experienced and observed racial discrimination, job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Lucas by denying her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees such as lubrication technician, schedule, vibration technician, and EAHS manager.

29.  Management uses a "tap on the shoulder approach and "word of mouth" as a recruitment mechanism ensures that almost all management positions go to white employees. On occasions when IP posted a job, white employees such as David Peagrem are pre-selected by being given training to match the qualifications.

30. Lucas has also been exposed to a racially hostile environment. Some white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles. The display of the flag is a symbol of racial oppression and slavery. The employees felt comfortable wearing such symbols in front of IP management. Maintenance employees make racial comments and

management do not take prompt remedial action to stop such comments from being made.

31. **Shedrick Morrow,** an employee since 1993, has experienced and observed racial discrimination, promotions, training, discipline, hostile environment and other terms and conditions of employment. Morrow is a Taylor lift operator. Morrow observes that the white employees such as David Peagram are offered training and then selected for positions. Morrow was discriminated against by not obtaining for job classifications traditionally held by white employees at International Paper.

32. Morrow has also been exposed to a racially hostile environment. Some white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles. The display of the flag is a symbol of racial oppression and slavery. IP local management tolerated these displays. Morrow is also aware of the racial comments made by the maintenance employees. In November 2006, Morrow has heard white employees remark about a Louisiana State University's football program, "They got some big ass coons down there" The comment was reported, along with another remark and no prompt remedial action was taken.

33. **Thomas Johnson,** an employee from 1997-2007, has experienced

and observed racial discrimination, racial harassment with respect to selection decisions, job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. The African-American employees are assigned to the I-Line heavy lifting and the white employees are assigned to the press operator positions. This pattern and practice of racial discrimination has adversely affected Adams by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at International Paper such as technician, scheduler, supervisor, and EAHS manager positions.

34. Johnson also experienced discrimination with respect to discipline as he was charged with violating the absence policy for observing the federally recognized Martin Luther King Day Holiday.

35. Johnson has also been exposed to a racially hostile environment. Some white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles. The display of the flag by their fellow employees is a symbol of racial oppression and slavery. IP local management tolerated these displays and maintenance employees making racial comments. No

prompt remedial action was taken and International Paper did not have an effective harassment program to prevent such conduct.

36.     **Steve Stone**, an employee since 1986, has experienced and observed racial discrimination, job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. The African-American employees are assigned to the I-Line and the white employees are assigned to the press operator positions. This pattern and practice of racial discrimination has adversely affected Stone by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at International Paper.

37.     Stone has also been exposed to a racially hostile environment. Some white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles. The display of the flag is a symbol of racial oppression and slavery. Maintenance employees make racial comments such as, "What do you call a nigger on a branch with four monkeys ? A branch manager." The comment was reported to IP management and no prompt remedial action was taken.

38.     Stone, is assigned to the I-line and has sought to move to the senior

press operator. The I line is more physically demanding the press operator positions. White employees have opportunities for training to move to departments such as maintenance. White employees receive training and then are awarded positions in the maintenance department without posting the job. White employee David Peagram has also been selected for unannounced training opportunities and then be awarded a job after attending company sponsored training.

39.    **Marcus Varner,** an employee since 1997, has experienced and observed racial discrimination, job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. The African-American employees are assigned to the I-Line and the white employees are assigned to the press operator positions. This pattern and practice of racial discrimination has adversely affected Varner by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at International Paper and such as supervisor, lubrication technician, scheduler, vibration technician and EAHS manager.

40.    Varner has also been exposed to a racially hostile environment. Some

white employees exposed the African-American employees to rebel flags on T-shirts and cars. Varner is also aware that racially jokes were being told in the work place. The display of the flag is a symbol of racial oppression and slavery. International Paper Management was aware of these displays and did not take effective preventative action to stop such actions.

41.   **Daniel Warren,** an employee since 1997, has experienced and observed racial discrimination, racial harassment with respect to selection decisions, job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. The African-American employees are assigned to the I-Line and the white employees are assigned to the press operator positions. This pattern and practice of racial discrimination has adversely affected Warren by denying him the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at International Paper to supervisor and management jobs.

42. Warren has also been exposed to a racially hostile environment. Some white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles. The display of the flag by their fellow employees is a symbol of racial oppression and slavery. IP local management

tolerated these displays and maintenance employees making racial comments. No prompt remedial action was taken and International Paper did not have an effective harassment program to prevent such conduct.

43. **Athena Woodson,** a former employee of International Paper from 2001 until 2007, experienced and observed racial discrimination, job assignments, promotions, training, discipline, hostile environment and other terms and conditions of employment. This pattern and practice of racial discrimination has adversely affected Woodson by her the opportunity to work in an integrated environment in which African-American employees hold management positions; by not being considered for job classifications traditionally held by white employees at International Paper such as technician, scheduler, and EAHS manager positions.

44. Woodson has also been exposed to a racially hostile environment. Some white employees exposed the African-American employees to rebel flags on clothes, lunch boxes and vehicles. The display of the flag by their fellow employees is a symbol of racial oppression and slavery. IP local management tolerated these displays and maintenance employees making racial comments. No prompt remedial action was taken and International Paper did not have an effective harassment program to prevent such conduct.

45. The plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back-pay, compensatory damages, punitive damages, injunctive and a declaratory judgment is their only means of securing adequate relief. The plaintiffs are now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT I
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

46. Plaintiffs restate and incorporate by reference Paragraphs 1-45 above as part of this Count of the Complaint.

47. International Paper has discriminated against the Plaintiffs with regard to hostile environment, promotions, job assignments, selection procedures, training, racial intimidation, and other terms and conditions of employment because of their race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and 1981a.

48. International Paper's conduct has been intentional, deliberate, willful and conducted with disregard of the rights of Plaintiffs.

49.  By reason of International's Paper discriminatory employment practices, the Plaintiffs have experienced extreme harm, including loss of compensation, wages, back and front pay, compensatory and punitive damages and other employment benefits and, as such, are entitled to all legal and equitable remedies available under Section 1981.

## COUNT II

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e

50.  Plaintiffs restate and incorporate by reference Paragraphs 1-49 above as part of this Count of the Complaint.

51.  International Paper has discriminated against the Plaintiffs with regard to racial harassment (hostile environment), selection procedures, promotions, training, and other terms and conditions of employment because of their race, in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991.

52.  By reason of International's Paper's discriminatory employment practices, the Plaintiffs have experienced extreme harm, mental distress, emotional pain, loss of compensation, wages, back and front pay, and other employment benefits and, as such, are entitled to all legal and equitable remedies available under 42 U.S.C. § 2000e.

## IV. PRAYER FOR RELIEF

**WHEREFORE**, the plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant violate the rights of the plaintiffs as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq. and the Civil Rights Act of 1991 and 42 U.S.C. § 1981.

2. Grant plaintiffs a permanent injunction enjoining the defendant International Paper, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended and 42 U.S.C. § 1981.

3. The plaintiffs further pray for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, back pay, front pay, prejudgment interest, compensatory damages, punitive damages, and attorneys fees and expenses.

Respectfully submitted,

_____
Lee D. Winston
Roderick T. Cooks
Attorneys for Plaintiff

**OF COUNSEL:**

**WINSTON COOKS, LLC**
319 17th Street North
Birmingham, Alabama   35203
(205) 314-0515

19